Mr. Smith. Good morning, thank you, Your Honors. Christopher Smith on behalf of the plaintiff appellants. We must respect court's decisions, but if we don't respect the sensibilities of juries, we truly do not have a jury system. In this case, it was an admitted liability case on some very serious claims, and the jury did its duty and came to unanimous conclusion after hearing the evidence about compensatory damages. They found for Seneca Adams in the amount of $2,400,000 in compensatory damages, and they found for Tari Adams in the amount of $1,000,000 in compensatory damages. So can I focus this for a bit? Yes, we have jury findings on damages. We do have this thought that there was ground for remitter, and as this court said in Ash v. Georgia Pacific, in that, granted probably dictum, but whatever, we said you'd have the, there's no choice to make, and so you can appeal straight away. So let's assume for the moment that that's correct. It seems to me the issue for us, number one, is whether this was a circumstance in which remitter could be considered at all, and the primary argument, as I understand it, that the city makes to say yes it was, was the closing argument, that that was so inflammatory that somehow we couldn't trust the jury's verdict. As far as stacking up cases on all sides, there are cases that would show you are within boundaries. There are cases that show lower amounts. I mean, there could address the closing argument for a moment. Judge, we see that as a Hale-Berry attempt to grab onto something that throws this case at issue. The reality of this case was that wasn't even objected to at the time it was made. This was a very clean case where all the sensibilities from every witness on the stand was to describe exactly what their damages were. There were no attempts in any way to inflame the situation any more than it was, and that, inclusive of the fact there wasn't even objected to, it was corrected by any instructions which instructs the jury to do what they're supposed to do. All that was was an analogy. Nobody in the jury believed that the individuals were animals. It was a point that was being made by counsel that essentially when you're in a jail, and you don't know the people who you're with, and you're put there without knowing more, the fear is real when people have unknowns, and that's all the analogy was to the animals. So was there any opportunity, of course obviously the city could have objected during the argument, because you can always do that, but they didn't argue afterwards, did they? No, they did not argue afterwards, and again, if you read the opinion of this court and the arguments that were made, you will see that in fact what they are saying is our clients were so respectful and did so well, and they have all these things that they've done great, that it's almost contrary to even the point that this was somehow inflammatory. We presented our plaintiffs as people who were doing their best and trying to get through, and never exaggerated what happened to them in that Cook County Jail, and the idea that we take this one statement and try and blow the trial out just as a grasp, a grasp to be able to hide behind the fact that I do not agree with the jury as to the amount here, regardless. Speaking of grasps, I'm trying to figure out why this beating, is there any reason in the record anywhere as to why these people were chosen to be beaten in this horrific fashion? Well, it's admitted to that it was even on a racial basis, and the reasoning was that this person ran from the police, and unknowingly ran from the police. There were three separate beatings, and it went on because they stood up for their rights to say, what is going on with my brother here? Why is he getting beaten by this police officer? And then continually, every time they spoke forward, it got worse. Cars were rammed into my client's car in terms of beatings happened. After they went and said, what are you doing to my brother? Why are you keeping him here behind the jail? You're saying that, for instance, the police weren't looking for a cop killer, or I don't know what. No evidence at all, other than the fact that when the police were coming, my client didn't know they were coming for him, and he was jogging to his home. That is the only evidence that was presented on this point. It was admitted to that this was excessive force. It was admitted to that this was a false arrest. It was admitted that my client was facing 14 years for malicious prosecution. If we were to determine that we could not reach the merits of the remitted, let's say, but could only remand for the district court to present the option of a new trial, is that relief that you want from this court? Well, we believe that this court is not in a position to ignore error. Once it's rightfully before the court, they cannot ignore error, and therefore that you must weigh in on the merits of the situation. Would it be the ideal? No, but certainly there was no waiver, for instance. That's what I wanted to say, because the city argues at length that you have waived the option of a new trial. They recognize that it's error not to have given the option, and you've certainly presented your point that you don't think the district court should have gone down the remitted or path at all, and that's an argument that one can consider, but should we think, hypothetically, that there might have been some ground, you'd rather have the option of choosing a new trial than just sitting on this remitted? Well, we asserted our rights. We didn't waive our rights, and we have subjected, once we were properly here, we are subjecting our courts to the decision of this court regarding the issue. However, it was not a waiver in any way. We have no duty to subject ourselves to error and to subject ourselves to further error, but there was no waiver of any rights. We are here properly, as stated in Ash, and we are asserting our rights for this court to see error and correct it. The defendant's sole purpose here is they want to hang on to error. There's no right to hang on to error. If there was an appropriate jury, had by both sides, nobody has a right to the benefits of an error, and that's their whole argument here. Well, but their argument also, just to give them the benefit of the doubt, is that this was a situation, largely because of the closing argument, where a district court rationally could consider remittitor, and ordinarily, you should have had the choice between taking the remittitor or accepting a new trial on damages, but they argue, you know, and you're free to respond, that you have given up the option of the new trial, and so the only outcome, in their view, would be for you to live with the remittitor. That's my understanding of how this all boils down, from their standpoint, and you're saying, number one, we didn't waive new trial. Yes, we are arguing there shouldn't have been a remittitor, because we think that first step was wrong, but should this court, for some reason, disagree with that, then rather than just accepting the remittitor, it has to go back for the full procedure that Dimmick against Sheed, and all cases forward, have called for. The appellees are incorrect on that assumption. I mean, we are here, if the court will not weigh in on the merits, the court, it would have to be remanded for new trial, but we are subjecting ourselves to the jurisdiction of this court, certainly, so if it does weigh in, and if it does say there was no error, we are accepting that, but it is so clear, the error here, the defense, if they were looking at judicial economies, if they believed that the court didn't abuse its discretion, would be running here saying, Judge, let's all get this done today, we're all through, but that's not what they're doing. They're holding on to that error, and that hold over these plaintiffs to put them in the position where this can do even more damage. So one of the things, as I understand your argument about the comparable awards, is that your clients suffered a number of different kinds of injuries, so some of the comparables only involve one or two of those varieties. They had, of course, the excessive force in the beatings, they had the unlawful imprisonment, they had the emotional damages, whatever, I'm probably leaving something out, but they had a lot of different things, so by the time you add them all up, as I understand, you're saying they fit within other awards. Absolutely, and the court didn't do that, and even if you only took certain subsections of it, actually we're supported even by only when you look at jail time, and only when you look at malicious prosecution, and disregard the beatings. In fact, if you look at the primary case the court cited, and without sounding sarcastic, it's almost as if our defendants owe the city of Chicago money for the beatings, because they were aligned with the 58 days and 46 days for a million dollars. The judge would basically have to say... You're talking about the Smith and Oakland case? Smith versus Oakland, three million for a case where there was four and a half months in jail, we had seven months in jail, and then you add the beatings, and this is a remitted case, and we're still below that, and we have much more damages. So again, it was simply... Everything was disregarded when there wasn't enough to find some excuse to comport the reasoning to what the court was finding as opposed to what the jury. This was a rational reasoned jury in every form. One of the arguments you present for your clients is that this option, if this is sent back with regard to the mistake on the remitter for the new trial, you call it illusory and unconstitutional. And so you do not want to seek a new trial. What is the issue? You may do better the next time, even more damages. In terms of... If you look at the courts, they're saying you could take a pratfall. No second trial. No, that's only in the second trial, though. Let's be clear. I mean, this court has Circuit Rule 36. If we thought there was some reason a fresh pair of eyes was needed, we could, say, send it back to a different judge. I mean, there's... And the Thomas article, while perhaps creative, is not one that's really caught on in the Supreme Court or anywhere. I'm going to take the first question in terms of... These plaintiffs have already been harmed to the tune of a year and some months. I mean, we couldn't even get the verdict, the judgment entered in the case. There was no sign at any point of time that they had an option of some sort of remedy that would have worked here. We have been damaged irreparably even now. So the idea of some secondary trial... And a secondary trial, just like a third trial or a fourth trial, never ultimately cures the problem here. The problem is always going to be, did a plaintiff or a party get a fair jury trial? And the fact there's a second trial does not do anything to change the fact the first one was reasonable. And, in fact, what can happen if there was a second trial by error is you can say you shouldn't have had to do that and you can get the first jury verdict reinstated. But I understand. You're arguing that there's been a lot of time. So I'll let you save a minute and hear from Ms. Masters. Thank you. Ms. Masters. May it please the Court. As the Court has recognized, the city has conceded that error occurred here in not granting the plaintiffs the opportunity of a new trial. But it is our position that, at this point, they have relinquished their right to pursue that precisely because... I don't see that at all. Under Ashe, the district court made a mistake, but they can appeal. And their appeal includes question number one, was it an abuse of discretion to order the remediator? Or was this the normal kind of situation in which the jury's verdict has to be respected? If you answer the question it was error to require the remediator, then you're done. You reinstate the jury's award. If you say, no, it wasn't an error to require some kind of remediator, but there were flaws in the procedure, I'm pretty satisfied that they have said, rather than lose altogether, they would rather go back and have the proper procedure, not infected by the very error that the city has conceded, which is the failure to offer the new trial option. First of all, we, of course, particularly believe that Ashe and Republic Tobacco stand for the fact that you cannot basically accept a remediator and protest. They did, though. Well, they did in accordance to Republic Tobacco, which is perhaps more on point. And in Republic Tobacco... That's not what we said in Ashe. The quote is, had the court chopped down J&W's verdict without permitting a new trial, J&W would have had no choice to make and could have appealed straightaway. That doesn't mean they accept the remediator. Your Honor, that's correct, but in terms of jurisdiction, we don't concede that they can't appeal right away. The question is, what's the remedy for the error? They couldn't be more clear that they're opposing this remediator. What are they supposed to say? They're supposed to seek in this court a new trial, and specifically... No, they're not. Step one is, was there ground at all to disturb this jury's verdict? You don't get to remediator until... I mean, suppose the verdict had been $100,000 for each person and the district court had cut it down to $50,000. I mean, you would say, that's ridiculous. On this record, anybody would accept $100,000. So the first step is, do you even go into the remediator business? You don't do that in every case. Indeed, you do it only when there is some reason to feel that there was a misapplication somehow of the jury. And so you give people, to make it constitutional, you give them the choice of taking the lower amount of money or a new trial. That's been true since Dimmick against Sheed. And we would agree, but it is our position that Dimmick and Gasparini and Herzl all stand for the proposition that remediators cannot be entered without offering the new trial, and that the mistake to be corrected here is the offer of the new trial. And that's where I don't agree with you. You've really divided this up. You have compartmentalized things that ought not be compartmentalized. You know, you discussed the number of days of imprisonment in assessing the reasonableness of the verdict, but weren't the plaintiffs under restrictions far longer than that? I mean, Tarry was under a 7 a.m. to 7 p.m. curfew for two years, living during that time with the fear of having his bond revoked. Both Seneca and Tarry spent eight months on probation with the requirement of regularly reporting to a probation officer. Shouldn't those restrictions also support a higher verdict amount? Because they represent restrictions on ongoing restrictions on those two individuals' liberty. Can you point to verdict amounts in cases that also involve those factors, let alone the beating and the time in prison? It's a terrible case. And the city is to be commended for conceding liability, I would say. In answer to Your Honor's question, the Roddick case involves someone who is arrested and in jail for 23 days and then has to... Twenty-three days is not all those months. Well, and then he's fighting the charges for 14 months and has... Violent or significant restrictions, Judge Rovers, reminding you. Right. Your Honor, I would concede there's no case on point with the restrictions, that they are entitled to be rewarded for those and that the judge did, in fact, take those into consideration. And the beatings were nightmarish. Nightmarish. And to be maliciously prosecuted on top of that for something they never did where they get the full expungements eventually, I mean, it's a... And they are entitled to a substantial award, but they are not entitled to a monstrously excessive one. Why is this monstrously excessive in light of all the other cases? People are citing cases right and left. Some of them are higher. Some of them are lower. You can't just pick the ones you like when this many bad things happen to them. So in the cases that are cited to the district court, even by plaintiffs, in the cases that we rely upon, there is extensive evidence of ongoing emotional, mental, physical harm, and that is not... But I've just given you a litany of ongoing emotional harm. To live with those kind of clouds above you, to be terrified every time you see a police officer, to move away from the city of your birth, to get away from all of this. I have to be very honest, Ms. Mizner, I frankly don't understand why you're here on this particular case. Well, Your Honor, the standard of review is abuse of discretion, and we do not believe that the district judge abused his discretion. This is our position that the evidence, the actual evidence, not the closing argument, does not support the verdict. For instance, there's a lot of testimony about race. The reply brief is full of references regarding race. But, in fact, Seneca testified that he was subjected to racial slurs. No one else testified to that. So what, the jury could believe that? Yes, they could. Why is his testimony not completely competent? It is. They could believe it as to him, but it doesn't apply as to Tari. Oh, please. I mean, surely, you know, Tari is involved with Seneca's arrest. He goes after to find out what's going on with Seneca, as Sakara does as well. I mean, abuse of discretion, of course, as you rightly point out, is a deferential standard of review, but it's not automatic affirmance. You have benchmarks that you look at in this particular line of cases, and if the judge doesn't acknowledge the benchmarks, I don't think we are the jury. We're not the ones to nitpick how much pain and emotional suffering Seneca and Tari describe. The jury heard it. They thought it was enough. But the problem is that it is monstrously excessive when you look at the comparable cases where there have been testimony from treaters, from psychiatrists, of ongoing serious emotional harm. And we're talking about, we could take a look at Mason, which is a $625,000 judgment for there was malicious prosecution and excessive force. How about Smith? How about Ibanez? Smith is remitted to $3 million, so I guess if you accept $3 million as the benchmark, even Seneca is below that. But let's talk about Smith for a minute. Which is a district court case, by the way, but anyway. Sure. But in Smith, there's testimony that the plaintiff risked parole revocation. He had an extensive history that involved loss of job from his imprisonment, loss of his furniture, loss of his home, harm to his family relationship, and harm to his relationship with his girlfriend. But not the kind of beating that Seneca endured. These cases are all a little different. Yes. This beating is unbelievable. It is. They are all different. I would add, though, in Smith that the court considered that the fact that he was arrested because a rifle was planted on him and he was humiliated by being arrested while naked in bed. And so why not be humiliated by being arrested because of racial epithets? That's pretty awful. And there's a strip search involved, a humiliating body cavity search. So if you want to get into that kind of thing. There's living all those months in captivity over at the Cook County Jail. Well, Your Honor, the point is that we believe the district court properly analyzed all of the And I want to make a few other points to the court, which is, first of all, if you want to talk about judicial economy, which the plaintiffs did. Well, let me just ask you, with regard to the main argument that was made by the city for the remittitor, it was based on inflammatory remarks made on behalf of the plaintiffs at the end of trial. What specifically does the city point to as being inflammatory or the basis for that request for remittitor, outside of the damages that have been discussed? Sure. Well, on appeal, we are defending that the district court had authority to rely on the closing argument that there was the testimony that they absolutely had to move to Arizona. I mean, not the testimony, the statement in closing that the plaintiffs absolutely had to move to Arizona to get out of town when their own testimony was they had multiple reasons for moving to Arizona. They had relatives there, friends there. There was no objection to any of this by the city at the argument. The district judge just sort of browses through the record and pulls this out. That's correct. But on appeal, we'd make two points. One is that the plaintiff doesn't raise that argument until his reply brief. As we pointed out in our opening brief on page 20, the plaintiff only complains about that part of the district court's order by saying there were no unsubstantiated claims in his closing argument. Well, and what he's also saying is if you're going to look at comparable cases I fit within and then if you zero in on what the district court said, it seemed to be primarily the closing argument and nothing, whether it was the move to Arizona, if it was one reason or one out of five reasons, it was still a reason and conditions at the Cook County Jail can be pretty rugged. So maybe the language was dramatic, but that was all it was. Our point to the court is that the district court did not abuse its discretion in looking at that. The district court was the eyes on in the court to evaluate it, and the district court could evaluate what it felt the impact was. So where do jury verdicts stand under your view? So I think you're arguing for a rule that district courts can always remit, regardless of how much evidence there is to support the jury's verdict, because they're the ones who are there. They're, in effect, the 13th juror. But that wasn't my understanding of the law, either on complete or partial grants of new trial. District judges don't sit as the 13th juror. We have juries of 12 or 6 or whatever it is in civil cases. Correct. No, Your Honor, we're not arguing that. That motion was brought before the court. But I don't see where the stopping point of your argument is. If this district court was free simply to say, gee, that's not the award I would have made based on this, where are we left with the jury's right to be the one to evaluate what's obviously a very contested damage argument? Well, we're left with the right to retrial, which is what the plaintiffs don't particularly seek. But you shouldn't have to have a retrial if the first trial is fine. Sometimes judges abuse their discretion in granting new trials. You can't review that until the new trial is over normally, but it's not just an automatic rubber stamp. Your Honor, we would agree with that. But the point that we would make here before you today is that Kenan, going back to Kenan and even Kenan's case before it, that the proper remedy is to say even if that error is made, it's to remand. Well, if they wanted to remand, but they even opposed the Rule 60, which we filed, frankly, if they were interested in judicial economy. Rule 60 doesn't change the finality of the underlying judgment. Rule 60 is an extraordinary relief. So I don't think they had any duty to go along with Rule 60. If you'd filed a 59 or something, maybe that would have been different. But Rule 60 is different. Anyway, if you want to wrap up, please do. Yeah, I mean, what we would wrap up with is that the mistake here was the failure to grant the new trial. That should have happened. The plaintiffs are up here on the merits. We believe the timing is wrong under the Supreme Court cases and that the district court's judgment was not an abuse of discretion when the actual evidence is applied to the comparable cases and when it's looked at in the light of the actual testimony and not all of the hyperbole that was before the court in the closing argument and even, frankly, in the briefs. And we urge the court to really take a close look at the trial testimony. Thank you, and we'd ask that the judgment be affirmed. All right, thank you very much, Ms. Masters. Anything further, Mr. Smith? I think you're down to it. How much time does he have? You have a minute. Just briefly, the counsel mentioned the Mason case. I want to make it clear there was no jail time at all in that $650,000 verdict. I don't know how they continue to manage to talk about Smith versus City of Oakland, the $3 million case, which was half the jail time and no beating, as somehow supporting their position. And finally, with respect to this trial and the evidence that was presented from the jury, this verdict would stand even if there was no closing argument whatsoever. We could not even have showed up and these facts support what the jury did in this case. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.